# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA GIL,<br><br>*Plaintiff*,<br><br>v.<br><br>ALLY FINANCIAL INC., WELLS FARGO BANK, N.A., TOP SPEED MOTORS LLC, L.J. MARCHESE CHEVROLET, INC., and HERSHEYS AUTO, INC.,<br><br>*Defendants*. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Maria Gil, Plaintiff herein, by her attorneys, alleges and complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Maria Gil ("Plaintiff" or "Ms. Gil"), an individual consumer, brings this action for monetary damages, injunctive relief, and declaratory judgment, seeking redress for unlawful and predatory practices relating to her purchase and financing of two automobiles.

2.      Specifically, Plaintiff was lured into the dealership of Top Speed Motors LLC by means of an online advertisement and was then – through a variety of sharp and deceptive practices, including clever manipulation of a digital signature pad – conned into paying significantly more than the agreed-upon, advertised price.

3.      Plaintiff seeks injunctive relief, declaratory relief, and actual, statutory, treble, and punitive damages against Defendants for, *inter alia*, violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and its implementing regulations, 12 C.F.R. §§ 1026 *et seq.* ("Regulation Z"), the New York Motor Vehicle Retail Installment Sales Act, N.Y.P.P.L. § 301 *et*

*seq.* ("MVRISA"), 49 U.S. Code § 32705 ("Odometer Act"), New York General Business Law § 349 and § 350, and for common-law fraud.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA).

5.      This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Ally Financial Inc. and Wells Fargo Bank, N.A. regularly do business in this District.

## THE PARTIES

8.      Plaintiff Maria Gil is a natural person and citizen of New York residing in Yonkers, New York.

9.      Ms. Gil is a "consumer," as defined in 15 U.S.C § 1692a(3).

10.      Top Speed Motors LLC ("Top Speed") is an automobile dealership located in Queens, New York, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

11.      Top Speed is a domestic corporation registered with the New York Secretary of State.

12.      Top Speed was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

13.    Hersheys Auto Inc. ("Hersheys") is an automobile dealership located in Monroe, New York, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

14.    Hersheys is a domestic corporation registered with the New York Secretary of State.

15.    Hersheys was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

16.    L.J. Marchese Chevrolet, Inc. ("Marchese") is an automobile dealership located in Fort Montgomery, New York, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

17.    Marchese is a domestic corporation registered with the New York Secretary of State.

18.    Marchese was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

19.    Top Speed, Hersheys, and Marchese are collectively known as the "Dealership Defendants".

20.    Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association.

21.    Wells Fargo is authorized to do business in the State of New York, and transacts business in the State of New York.

22.    Wells Fargo provides automobile loans and loan servicing nationwide, including in the state of New York.

23.    Wells Fargo is, upon information and belief, assignee of certain contracts with Marchese as discussed below.

24.     To the extent Wells Fargo is not liable in its own right, Wells Fargo is liable as an assignee (*e.g.* pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), the Retail Installment Contract ("RIC") between Plaintiff and the Marchese, and other applicable law) and/or based on agency principles.

25.     Ally Financial Inc. ("Ally") is a financing company.

26.     Ally is authorized to do business in the State of New York, and transacts business in the State of New York.

27.     Ally provides automobile loans and loan servicing nationwide, including in the state of New York.

28.     Ally is, upon information and belief, assignee of certain contracts with Hersheys, as discussed below.

29.     To the extent Ally is not liable in its own right, Ally is liable as an assignee (*e.g.* pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), the Retail Installment Contract ("RIC") between Plaintiff and the Hersheys, and other applicable law) and/or based on agency principles.

30.     Wells Fargo and Ally are collectively known as the "Financing Defendants".

**FACTUAL ALLEGATIONS**

31.     In August, 2021, while shopping online for a vehicle, Plaintiff and her son visited Top Speed's website and found two vehicle in which they were interested.

32.     A 2014 BMW 5 Series, VIN #WBA5B3C52ED292997 (the "BMW Vehicle") was advertised on Top Speed's website for $18,900.

33.     A 2016 Nissan Murano, VIN #5N1AZ2MH3GN101127 (the "Nissan Vehicle") was advertised on Top Speed's website for $16,900.

34.     Plaintiff's son contacted Top Speed inquiring about the BMW Vehicle and the Nissan Vehicle (collectively, the "Vehicles").

35.     Top Speed responded that the Vehicles were still available.

36.     Plaintiff and her son went to Top Speed to trade in Plaintiff's 2019 Subaru (the "Trade-In Vehicle") and purchase the Vehicles.

37.     Top Speed informed Plaintiff that it valued her trade-in at $15,000 net of the Trade-In Vehicle's loan balance of $9,251.

38.     Plaintiff and Top Speed agreed to put $13,000 of the trade-in amount towards the down payment for the BMW Vehicle, leaving $5,900 to be financed.

39.     Plaintiff and Top Speed agreed to put $2,000 of the trade-in amount towards the down payment for the Nissan Vehicle, leaving $14,900 to be financed.

40.     Top Speed's sales representative asked Plaintiff for the keys to the Trade-In Vehicle, which Plaintiff handed over.

41.     Top Speed's sales representative asked Plaintiff to sign a small electronic device, a tablet, without showing Plaintiff the documents to which she was affixing her signature.

42.     Plaintiff never saw the RICs before she signed and they were never explained to her.

43.     To this day, Plaintiff never saw or received an Odometer Statement for the Vehicles.

44.     Plaintiff left Top Speed with the Vehicles, but without the Retail Installment Contracts ("RIC"s) or the Odometer Statements, or any other paperwork from Top Speed.

45.     Top Speed told Plaintiff that they would mail all the paperwork, but, to date, Plaintiff has not received any paperwork from Top Speed.

46.     On or about September 17, 2021, Plaintiff received the RIC for the Nissan Vehicle (the "Nissan RIC") from Wells Fargo.

47.     The Nissan RIC showed the cost of the Nissan Vehicle as $29,946.81 (including $2,477.81 in sales tax) as opposed to the advertised and agreed-upon price of $16,900.

48.     The Nissan RIC lists the Seller-Creditor as LJ Marchese Chrevolet Inc. in Fort Mongomery, NY.

49.     Prior to receiving the RIC from Ally, Plaintiff had never heard of or visited LJ Marchese Chevrolet Inc.

50.     To the best of Plaintiff's knowledge, Plaintiff has never spoken with anyone at JL Marchese Chevrolet Inc.

51.     The Nissan RIC lists an APR of 15.99%.

52.     On September 20, 2021, immediately after receiving the Nissan RIC, Plaintiff called Wells Fargo to complain about the terms of the Nissan RIC.

53.     Wells Fargo refused to provide Plaintiff with any assistance.

54.     On January 25, 2022, Plaintiff received the RIC for the BMW Vehicle (the "BMW RIC") from Ally.

55.     The BMW RIC showed the cost of the BMW Vehicle as $29,946.81 (minus $415.79 in sales tax) as opposed to the advertised and agreed-upon price of $18,900.

56.     The BMW RIC lists the Seller-Creditor as Hersheys Auto Inc, in Monroe, NY.

57.     Prior to receiving the RIC from Ally, Plaintiff had never heard of or visited Hersheys Auto Inc.

58.     To the best of Plaintiff's knowledge, Plaintiff has never spoken with anyone at Hersheys Auto Inc.

59.     The BMW RIC lists an APR of 7.44%.

60.     On September 28, 2021, Plaintiff called Top Speed to complain about the inaccurate information on the RICs for both vehicles.

61.     Top Speed told Plaintiff that there was nothing they could do because she signed the signature pad.

62.     Plaintiff argued that she couldn't see the details of the RICs when she signed.

63.     Top Speed replied that there was nothing they could do.

64.     On or about January 21, 2022, Plaintiff discovered that Top Speed had also signed her up, without her knowledge or consent, for GAP insurance.

65.     Plaintiff never purchased a vehicle from Hersheys or Marchese.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Violations of TILA, 15 U.S.C. §§ 1601–1667(f)**

66.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

67.     Plaintiff's transactions as described herein was a consumer credit transaction within the meaning of the TILA, 15 U.S.C. §§ 1601–1667f, and Regulation Z, 12 C.F.R. part 226.

68.     The Dealership Defendants regularly extend or offer to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

69.     The loan agreements provide on its face that the underlying debt is payable to LJ Marchese Chevrolet Inc. and Herseys Auto Inc, respectively, and the sales occurred at Top Speed, which at all relevant times held itself out as the the Seller-Creditor to Plaintiff with regard to both the Nissan and BMW transactions.

70.     The Dealership Defendants are "creditors" within the meaning of TILA and Regulation Z. *See* 15 U.S.C. § 1602(g)(1).

71.     The loan agreements list motor vehicles, an article of personal property, as collateral.

72.     Plaintiff is a natural person, and she purchased the Vehicles for personal, family, or household purposes. Plaintiff therefore is a "consumer" for purposes of entitlement to all disclosures required by TILA and with regard to entitlement to the Act's protections. *See* 15 U.S.C. § 1602(i) (specifying attributes of a consumer credit transaction).

73.     The loan agreements are written agreements payable in more than four installments.

74.     The finance charges as indicated in the loan agreements, as incorporated into the RICs, exceed $1,000.00.

75.     The loan agreements are contracts in which the Dealership Defendants, as creditors, commit to sell a natural person property primarily for personal, family, or household purposes, in which the total amount financed is less than $50,000. Consequently, the RICs constitutes a non-exempt "credit sale" for purposes of 15 U.S.C. §§ 1602(h) and 1603(3).

76.     The loan agreements are inconsistent with the advertisement for the Vehicles as well as the oral disclosures made by Top Speed's agent on the date of the transaction.

77.     The Dealership Defendants failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z, *e.g.*, 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, *e.g.*, 12 C.F.R. § 226.17(a)(1).

78.     Had the Dealership Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the Vehicles on the terms and conditions imposed on them by the Dealership Defendants.

79.     Had the Dealership Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained alternate, lower cost financing.

80.     In addition, the difference between the advertised price and the price set forth in the RIC's, i.e. the overcharge, would not have been possible in a cash transaction, would not have been charged to consumer buying these vehicles with cash was made possible only because the transaction was financed, and was a cost incident to the extension of credit.

81.     All of the overcharges (including but not limited to the service plan overcharge, the failure to credit Plaintiff's down payment and the increase of the Vehicles' price from the orally disclosed price to the final price) would not have been charged to a comparable cash buyer and were charged incident to the extension of credit.

82.     Accordingly, each and every one of these overcharges constitute an undisclosed finance charge, rendering the sale price, finance charge, amount financed, and APR materially misstated, in violation of TILA and Regulation Z, *e.g.*, § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

83.     In addition, the RIC's failed to clearly and conspicuously identify the creditor required to make disclosure, in violation of 15 U.S.C. § 1638(a)(1).

84.     For all these reasons, the Dealership Defendants are liable under TILA and Regulation Z for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, along with a declaratory judgment that it has violated TILA and Regulation Z.

85.     By extension, the Financing Defendants are liable for these same violations, as the eventual holder of the finance agreement the Dealership Defendants entered into without Plaintiff's consent and/or under agency principles.

86.     As a result of these TILA violations, Plaintiff is entitled to actual damages, statutory damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### Violations of MVRISA, N.Y. PERS. PROP. LAW §§ 301–16

87.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

88.     Plaintiff is a "retail buyer" within the meaning of MVRISA § 301(2).

89.     The Dealership Defendants are "retailer sellers" within the meaning of MVRISA § 301(3).

90.     The transactions as described herein involved "retail instalment sales" within the meaning of MVRISA § 301(4).

91.     As set forth above, Plaintiff was not provided with clear and conspicuous loan disclosures.

92.     In addition, to the extent disclosed, the relevant loan terms were materially misstated.

93.     Pursuant to § 302(5), MVRISA incorporates all TILA disclosure requirements.  The above-referenced TILA violations therefore also constitute MVRISA violations.

94.     In addition, Plaintiff was not provided a contract identified as a "Retail Installment Contract," in accordance with MVRISA § 302, at the time of the sale or at any time reasonably thereafter.

95.     In addition, as set forth above, the RIC's failed to clearly and conspicuously identify the creditor required to make disclosure.

96.     The Dealership Defendants' violations of MVRISA were willful, as evidenced at least by unwillingness to send Plaintiff the RICs and then refusing to correct it on Plaintiff's request.

97.     For all of the reasons stated herein, under MVRISA § 307, Plaintiff is permitted to recover from the Dealership Defendants any credit service charge, delinquency, or collection charge she has paid as a result of these transactions.

98.     Plaintiff is also entitled to injunctive relief barring the Dealership Defendants from henceforth violating MVRISA as set forth above.

99.     By extension, the Financing Defendants are liable for these same violations, as the eventual holder of the finance agreement the Dealership Defendants entered into without Plaintiff's consent.

## THIRD CAUSE OF ACTION
## Violations of 49 U.S.C. § 32705 (Odometer Act)

100.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

101.    The Dealership Defendants, upon selling the Vehicles to Plaintiff, transferred ownership of the Vehicles to Plaintiff.

102.    The Vehicles are "motor vehicles" as defined in 49 U.S.C. § 32101(7).

103.    Pursuant to 49 U.S.C. § 32705(a)(1)(A), the Dealership Defendants were required to disclose to Plaintiff the "cumulative mileage registered on the odometer."

104.    The Dealership Defendants did not disclose the odometer reading to Plaintiff upon transference of ownership of the Vehicles.

105.    Defendants' failure to do so was intentional, in bad faith and willful.

11

106.     The Financing Defendants are liable for these same violations, as the eventual holder of the finance agreement the Dealership Defendants entered into without Plaintiff's consent.

107.     For all these reasons, the Dealership Defendants are liable under the Odometer Act for statutory damages, actual damages, treble damages, punitive damages, attorneys' fees, litigation expenses and costs, along with a declaratory judgment that it has violated the Odometer Act.

### FOURTH CAUSE OF ACTION
### Violations of N.Y. GEN. BUS. LAW § 349(h) (Deceptive Practices)

108.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

109.     Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

110.     To wit, wholly apart from any other violations of law recounted in this Complaint, the Dealership Defendants' acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

111.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

112.     Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

113.    These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

114.    Specifically,

115.    Discovery will show that the Dealership Defendants routinely use the digital signature process to hide the full cost of financed transactions from consumers.

116.    These false and deceptive consumer-oriented actions and representations serve to convince consumers that they will be able to purchase or lease an automobile at a certain price, only to have that price drastically inflated after committing to purchase or lease the vehicle based on the Dealership Defendants' false representations.

117.    The Dealership Defendants' false and deceptive consumer-oriented actions result in Defendants receiving and retaining payments as the result of transactions into which consumers, and Plaintiff specifically, would not have entered if the true facts had been known.

118.    The Dealership Defendants' conduct and statements described above are materially misleading.

119.    As a result of these violations of NYGBL § 349, Plaintiff suffered and continues to suffer pecuniary and non-pecuniary harm.

120.    The Dealership Defendants' violations were willful and knowing and committed in bad faith.

121.    For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000, punitive damages, injunctive relief, costs and reasonable attorneys' fees pursuant to NYGBL §349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

122.    By extension, the Financing Defendants are liable for these same violations, as the eventual holder of the finance agreement entered into without Plaintiff's consent.

## FIFTH CAUSE OF ACTION
## Violations of N.Y. GEN. BUS. LAW § 350 (False Advertising)

123.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

124.    Under NYGBL § 350, "false advertising" means:

[A]dvertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

125.    The Dealership Defendants' oral and written representations of the Vehicles' prices, the costs and fees included within the ultimate price of the vehicle, and the contents of the loan agreements and RICs were materially misleading and constitute false advertising pursuant to NYGBL § 350.

126.    The Dealership Defendants' false advertising – including its online advertising and the representations made to Plaintiffs at the dealership – were done knowingly and willfully and was committed in bad faith.

127.    As a result of these violations of NYGBL § 350, Plaintiff – who would not have purchased the Vehicles but for the Dealership Defendants' false advertising – suffered actual damages as set forth herein.

128.    For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages as set forth herein, three times the actual damages up to $10,000, punitive damages, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### Common Law Fraud

129.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

130.    As set forth above, the Dealership Defendants defrauded Plaintiff by, *inter alia*, overcharging Plaintiff for the Vehicles, and by having Plaintiff sign an electronic tablet and affixing her signature to a fraudulent contract Plaintiff never had an opportunity to review.

131.    Discovery will show the Dealership Defendants intended to deceive Plaintiff.

132.    Plaintiff believed and justifiably relied upon the Dealership Defendants' representations. Plaintiff had no reason to know or expect that the documents to which her signature was affixed listed the grossly overinflated and incorrect purchase price, loan amounts, and service plans for the Vehicles.

133.    Had the Dealership Defendants been truthful about the transactions' sales terms and the contents of the loan agreements, and had the Dealership Defendants not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transactions entirely.

134.    As a result of such reliance, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

135.    Moreover, the Dealership Defendants' conduct was egregious on every level, involving outright deception.

136.    As a result of Plaintiff's reasonable reliance upon the Dealership Defendants' misrepresentations, Plaintiff is entitled to actual damages as set forth above, punitive damages, and costs.

### SEVENTH CAUSE OF ACTION
### Rescission

137.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

138.    As set forth above, the RICs are forged.

139.    As also set forth above, Plaintiff would not have signed the RICs but for the Dealership Defendants' fraudulent conduct.

140.    The Dealership Defendants' misconduct was material and willful.

141.    Damages will not afford Plaintiff a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

142.    Plaintiff is entitled to rescind her contract to purchase the Vehicles and all related contracts and services.

143.    As a result of these violations, Plaintiff is entitled to rescission of the RICs, restitution of all monies paid thereunder, and costs and expenses.

*(Continued on the next page…)*

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendants:

(a) awarding Plaintiff statutory damages and civil penalties, actual damages, consequential damages, treble damages, punitive damages, costs and expenses, and reasonable attorneys' fees;

(b) rescission/cancellation of the transactions;

(c) injunctive and declaratory judgment; and

(d) such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: June 22, 2022

Respectfully Submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group, LLP
80 Broad Street, Suite 1301
New York, New York 10004
T:  212.500.6114
F:  646.612.7996
dschlanger@consumerprotection.net

*Attorneys for Plaintiff*